IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2017

## STATE OF TENNESSEE v. JEFFREY WAYNE HUGHES

**Appeal from the Circuit Court for Lawrence County**
**No. 33792, 34049   Russell Parkes, Judge**

———————————————————

### No. M2017-00057-CCA-R3-CD

———————————————————

The defendant, Jeffrey Wayne Hughes, pled guilty to one count of theft over $250,000, one count of theft between $10,000 and $60,000, and six counts of money laundering. Following a sentencing hearing, the trial court imposed an effective sentence of twenty-seven years in confinement. On appeal, the defendant contends the trial court erred when failing to apply certain mitigating factors, denying probation on the money laundering offenses, and ordering his theft convictions to be served consecutively to his money laundering convictions. Following our review of the record, arguments of the parties, and pertinent authorities, we affirm the sentences imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Venus Niner, Franklin, Tennessee, for the appellant, Jeffrey Wayne Hughes.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Brent Cooper, District Attorney General; and Gary Howell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### *Facts and Procedural History*

On October 24, 2016, the defendant pled guilty to one count of theft over $250,000 from victim Lawrence County Fire and Rescue, Inc. ("Lawrence County Fire and Rescue"), one count of theft between $10,000 and $60,000 from victim Crossroads Volunteer Fire Department ("Crossroads"), and six counts of money laundering. The State agreed to dismiss eighty-one additional counts of money laundering as part of the plea agreement. The offenses occurred between 2009 and 2016, while the defendant

served as the volunteer treasurer for both Lawrence County Fire and Rescue and Crossroads. During this time period, the defendant was employed by the Tennessee Department of Correction as a fiscal director, for which he earned $5,870 monthly.

The trial court held a sentencing hearing on December 5, 2016. During the hearing, the State called Investigator Tommy Goetz, Teresa Purcell, Tyler McDow, T.R. Williams, and Ricky Bishop to testify, and the defendant testified on his own behalf. The parties presented the evidence summarized herein during the hearing.

Lawrence County Fire and Rescue is an umbrella organization over the thirteen volunteer fire departments in Lawrence County, Tennessee, including Crossroads. The fire departments are funded by Lawrence County and fundraisers held throughout the year by the individual volunteer fire departments. The money Lawrence County annually gives to the fire departments comes from the taxpayers of Lawrence County and is given directly to Lawrence County Fire and Rescue. Lawrence County Fire and Rescue then distributes the money to each volunteer fire department. The money given by Lawrence County and raised by the fire departments pays for equipment, maintenance, training, and insurance, with insurance being the largest expense. All chiefs and firefighters are unpaid volunteers.

Investigator Goetz, a criminal investigator for the Twenty-Second Judicial District Attorney General's Office, served as the lead investigator in the matter. Investigator Goetz testified that over the course of six years and ten months, the defendant stole $255,066.84 from Lawrence County Fire and Rescue and $10,800 from Crossroads, for a total of $265,866.84. This averaged $3,632 per month and $43,584.73 annually. The money was taken via checks drawn from the bank accounts of the two organizations. As treasurer for both organizations, the defendant was an authorized signatory on the checking account. However, each check required two signatures, and the defendant admitted to forging the second signature. Some of the checks were written for cash, and others were used to purchase Walmart gift cards. The defendant sold some of these gift cards on eBay, but gift cards worth $1,000 were used locally. Investigator Goetz was unable to determine where the stolen money went, and the defendant never offered an explanation for taking the money.

When Investigator Goetz initially approached the defendant regarding the investigation, he waived his *Miranda* rights and cooperated with the investigation. The defendant gave the investigators access to his home, including his computer, and admitted to stealing the money. The defendant subsequently hired new counsel, and when the investigators tried to speak with the defendant a second time, he declined. The defendant did, however, turn himself into authorities after learning there was a warrant out for his arrest.

After discovering the theft, Lawrence County Fire and Rescue filed a claim with its insurance carrier and received $100,000, less the deductible. The insurance payment went directly to Lawrence County Fire and Rescue, who evenly distributed the proceeds to each volunteer fire department. Had it not been for the insurance payment, two of Lawrence County's fire departments would have closed. Due to a delay in paying the claim and a subsequent premium increase, Lawrence County Fire and Rescue later changed insurance carriers, but its annual insurance premium remained higher than it had been prior to the theft.

After the discovery of the theft, the Lawrence County Commission requested a change in procedures. There are now periodic audits, and each fire department must provide Teresa Purcell, the budget director for Lawrence County Government, with its bank statements and copies of checks. This audit occurs annually prior to the Lawrence County Commission's approval of its monetary distribution to Lawrence County Fire and Rescue.

The defendant testified that he was thirty-four years old, married, and had four minor children. Prior to his arrest, he had worked continuously since the age of fifteen. He was very active in his church and volunteered for various local nonprofit organizations. The defendant was also a member of the Lawrence County Board of Commissioners. While briefly out of jail on bond with an ankle bracelet, the defendant worked at McDonald's. Since being incarcerated, the defendant has tried to be a positive influence on those around him. He mentors other men in his pod, attends church regularly, and participates in Moral Recognition Therapy, a twelve-step program designed to help offenders understand how their actions impacted others and prevent reoccurrence. The defendant apologized for his actions and expressed a desire to repay the money taken.

After the close of the proof, the State addressed the enhancement factors found in Tennessee Code Annotated section 40-35-114 and argued the trial court should enhance the sentences imposed because the offenses involved more than one victim and were committed by virtue of the defendant's position of trust within the victim organizations. The State further argued that while the defendant pled guilty to only eight felonies, he admitted to the commission of more than 200 criminal acts over the course of almost seven years, making the defendant "a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood." Accordingly, the State argued the sentences for the crimes related to the two separate victims and related to the money laundering should run consecutive to one another, with the sentences for the six Class B felonies running concurrently.

The defendant countered that he did not have a criminal history, did not have a history of drug use, was an active participant in his community, and was involved with his family's activities. Further, the defendant expressed a desire to make restitution, and his likelihood of doing so was higher with a shorter period of incarceration. With respect to mitigating factors, the defendant asserted his actions did not cause or threaten bodily injury, he cooperated with the police investigation, and he had been a model inmate since incarceration. The defendant further contended his record of steady, gainful employment abated any evidence that he was a professional criminal.

After considering the evidence presented at the hearing, including the presentence report, the principals of sentencing, and the arguments of counsel, the trial court ordered restitution of $3,107.69 to Cross Roads and $162,759.15 to Lawrence County Fire and Rescue. With respect to the enhancement factors, the trial court found the offense involved more than one victim, Cross Roads and Lawrence County Fire and Rescue. The trial court further found the defendant abused a position of public and placed greater weight on this factor.

With respect to mitigating factors set forth in Tennessee Code Annotated section 40-35-113, the trial court noted the defendant's criminal conduct neither caused nor threatened serious bodily injury but gave this factor little weight. The trial court then considered the mitigating factors proposed by the defendant. With respect to the defendant's contention his sentence should be at the low end of the range because he was cooperative with law enforcement and willing to assist from the beginning of the investigation, the trial court found the defendant changed his cooperative position after hiring new counsel and, accordingly, rejected the applicability of this proposed factor. The defendant next argued the trial court should mitigate his sentence because he has been a model inmate since being in custody. The trial court also rejected this assertion, noting it anticipates all inmates to be model inmates and refused to use the defendant's good behavior and decision to mentor other inmates to reduce his sentence.

The trial court next considered the imposition of consecutive sentences. When doing so, it noted the defendant turned eighteen in August of 2000, and the first episode of criminal activity occurred less than nine years later. This criminal activity spanned from May 4, 2009, through February 9, 2016, a time period of six years and ten months, or 38.22 percent of the defendant's adult life. The trial court noted it was "unrebutted and uncontroverted that almost 40 percent of [the defendant's] life was spent embezzling, stealing, and doing acts specifically meant to cover up that crime." Based on this evidence, the trial court found the defendant's record of criminal activity to be extensive, and the imposition of consecutive sentences appropriate.

After applying the above enhancing and mitigating factors and considering the principals of the Sentencing Act, the trial court imposed the following sentences:

1. Case number 33792, Count 1, theft over $250,000, Class A felony, eighteen years of confinement;

2. Case number 33792, Count 2, theft between $10,000 and $60,000, Class C felony, four years of confinement to be served concurrent to Count 1; and

3. Case number 34049, six counts of money laundering, Class B felonies, nine-years of confinement for each to be served concurrent with one another but consecutive to the sentences imposed for case number 33792.

The trial court denied the defendant's request for probation in case number 34049, finding a probated sentence would unduly depreciate the seriousness of the offenses, and ultimately imposed an effective sentence of twenty-seven years in confinement. The defendant subsequently filed a timely notice of appeal.

*Analysis*

On appeal, the defendant alleges: the trial court erred in refusing to give due consideration to the mitigating factors proposed by the defendant; the trial court erred when denying the defendant probation for the money laundering convictions; and the trial court erred when ordering consecutive sentences based on its finding the defendant was a professional criminal. In response, the State asserts the trial court's rulings regarding sentence length, probation, and the imposition of consecutive sentences were presumptively reasonable, and the defendant failed to overcome those presumptions. Based on our review of the record and applicable authorities, we agree with the State.

A.     Sentence Length

When the record clearly establishes the trial court imposed a within-range sentence after "a proper application of the purposes and principles of [the Tennessee Criminal Sentencing Reform Act of 1989, as amended in 2005 ('Sentencing Act')]," this Court reviews the sentence under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Once the trial court has determined the appropriate sentencing range, it "is free to select any sentence within the applicable range." *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-210(d)). When determining a defendant's sentence and the appropriate combination of sentencing alternatives, trial courts are to consider the following factors:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The enhancement factors set forth in Tennessee Code Annotated section 40-35-114 include: "[t]he offense included more than one (1) victim;" and "[t]he defendant abused a position of public or private trust, or used a professional license in a manner that significantly facilitated the commission or the fulfillment of the offense." Tenn. Code Ann. § 40-35-114(3), (14). The mitigating factors set forth in Tennessee Code Annotated section 40-35-113 include: "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury;" and "[a]ny other factor consistent with the purposes of [the Sentencing Act]." Tenn. Code Ann. § 40-35-113(1), (13). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

Here, the trial court first determined the defendant should be sentenced as a Range I, standard offender. Then, after considering the principles of the Sentencing Act and the arguments for and against the mitigating and enhancement factors proposed by the parties, imposed within-range sentences. A Range I sentence for theft over $250,000, a Class A felony, is fifteen to twenty-five years, and the trial court imposed a sentence of eighteen years. *See* Tenn. Code Ann. § 39-14-105(a)(6); § 40-35-112(a)(1). A Range I sentence for theft over $10,000, a Class C felony, is three to six years, and the trial court imposed a sentence of four years. *See* Tenn. Code Ann. § 39-14-105(a)(3); § 40-35-

112(a)(3). A Range I sentence for money laundering, a Class B felony, is eight to twelve years, and the trial court imposed a sentence of nine years for each money laundering conviction. *See* Tenn. Code Ann. § 39-14-903(a)(2); § 40-35-112(a)(2). The trial court stated its reasons for imposing theses sentences on the record, and those reasons were consistent with the principles and purposes of the Sentencing Act.

The defendant argues the trial court erred by failing to properly apply the following mitigating factors: pursuant to Tennessee Code Annotated section 40-35-113(1), the defendant's criminal conduct neither caused nor threatened serious bodily injury; pursuant to Tennessee Code Annotated section 40-35-113(13), the defendant was cooperative with law enforcement; and again pursuant to Tennessee Code Annotated section 40-35-113(13), the defendant had been a model inmate and a positive influence since becoming incarcerated. The trial court agreed the first factor applied but gave it little weight, which the defendant argues was error because the trial court should have stated the reason for its ruling on the record. Based on our review of the record, however, the trial court spent a significant amount of time addressing the proposed enhancement and mitigating factors and gave the fact the defendant's criminal conduct neither caused nor threatened serious bodily injury little weight due to the egregiousness of the defendant's actions. Any deficiency in the trial court's articulation of this reason was harmless and did not remove the presumption of reasonableness.

The trial court found the second factor did not apply because the defendant eventually quit cooperating with the investigation after hiring counsel. The defendant contends this ruling erroneously punished the defendant for invoking his constitutional right against self-incrimination. The defendant's argument is without merit. Enhancement and mitigating factors are advisory only, and the weighing of those factors is within the discretion of the trial court. *Carter*, 254 S.W.3d at 346. Moreover, this Court previously considered whether cooperation with a police investigation qualified as a mitigating factor under Tennessee Code Annotated section 40-35-113(13) and concluded the trial court properly refused to give the factor weight where evidence suggested the defendant did not fully cooperate with the police. *See State v. Kelly*, 34 S.W.3d 471, 482 (Tenn. Crim. App. 2000) (concluding the defendant's cooperation with the police investigation was not a mitigating factor where his course of conduct did not suggest full cooperation because he waited until his arrest to cooperate rather than immediately reporting his actions to the police).

The defendant's criminal activity spanned six years and ten months before the police approached the defendant regarding the theft, at which point the defendant initially cooperated. The defendant admitted to stealing the money, willingly let the police into his home, gave the police access to his computer and other devices inside his home, and expressed a willingness to speak with the police again following the search. When the

police followed up with the defendant, however, he refused to further assist. The evidence presented during the sentencing hearing supported the trial court's finding the defendant did not fully cooperate with the police investigation. The trial court did not abuse its discretion when refusing to apply the defendant's cooperation with the police investigation as a mitigating factor under Tennessee Code Annotated section 40-35-113 (13).

The trial court next refused to use the defendant's good behavior during incarceration as a mitigating factor because "the Court anticipates all inmates to be model inmates," and it was not aware of any case law supporting the defendant's assertion his good behavior should serve as a mitigating factor. The defendant contends this was error and points to an unpublished opinion of this Court finding the defendant's model behavior while incarcerated to be an appropriate mitigating factor under Tennessee Code Annotated section 40-35-113(13). *See State v. Daniel Christian Russell*, No. M1999-00202-CCA-R3-CD, 2000 WL 1130125, at * 10 (Tenn. Crim. App. July 27, 2000) (stating, "Here, the record reflects that during this eight (8) month confinement, the defendant has been a model inmate. We find this to be a mitigating factor pursuant to § 40-35-113(13)."). We are not persuaded by this case. In *Daniel Christian Russell*, a law enforcement officer testified at the defendant's sentencing hearing that since being in custody, the defendant had not received any write-ups, had not violated the rules and regulations of the jail, and never complained. *Id*. at *3. In the present matter, the defendant did not call a law enforcement officer or any other witnesses who could corroborate his claims of good behavior. Rather, the defendant testified as to his own model conduct while in custody, which included mentoring other inmates, staying out of fights, and participating in rehabilitative therapy. This matter is instead analogous to *State v. Edy Chavez Pantaleon*, No. M2012-00575-CCA-R3-CD, 2013 WL 1790991, at *7 (Tenn. Crim. App. April 25, 2013), *perm. app. denied* (Tenn. Oct. 17, 2013), where this Court affirmed the trial court's refusal to apply the defendant's good conduct during incarceration as a mitigating factor because "the defendant offered nothing in support of his good behavior other than his own self-serving testimony." The trial court did not err when refusing to apply the defendant's good behavior during incarceration as a mitigating factor.

The record demonstrates the sentences imposed by the trial court complied with the purposes and principles of the Sentencing Act. Pursuant to Tennessee Code Annotated section 40-35-102, "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). Over the course of almost seven years, the defendant stole $265,866.84 from volunteer fire departments in Lawrence County, Tennessee, which averaged $3,632 per month. The defendant had access to these funds due to positions of trust within the victim organizations. The defendant never offered a complete explanation for what

happened to the money taken, but the investigation revealed he used a portion of it to purchase Walmart gift cards that were then resold on eBay. The volunteer fire departments in Lawrence County, Tennessee are funded by the Lawrence County Board of Commissions via taxpayers and through fundraisers held by the individual departments. This money is used to buy the equipment needed by the volunteer firefighters to protect the citizens of Lawrence County from fire. As a result of the defendant's criminal acts, two volunteer fire departments in Lawrence County would have closed had it not been for the receipt of insurance proceeds. Additionally, as a result of the insurance claim filed to reimburse the victim organizations for the stolen money, the premium paid by Lawrence County through its taxpayers increased. After considering this evidence, the trial court imposed within-range sentences for the defendant's convictions of theft of property of $250,000, theft of property over $10,000, and money laundering, and the defendant has not overcome the presumption these sentences were reasonable. The defendant is not entitled to relief on this issue.

## B.     Denial of Probation

The defendant challenges only the trial court's denial of probation for his money laundering convictions. The defendant was eligible for probation on his money laundering convictions because the trial court imposed a sentence of ten years or less for each count.[1] *See* Tenn. Code Ann. § 40-35-303(a). Money laundering, however, is a Class B felony, so the defendant was not considered a favorable candidate for probation. *See* Tenn. Code Ann. § 39-14-903(a)(2); § 40-35-102(6). Further, "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Tenn. Code Ann. § 40-35-102(5).

The advisory sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). To do so, the defendant must show the alternative

---

[1] The defendant correctly points out the trial court did not address the possibility of probation for the Class C felony conviction of theft of property over $10,000, presumably because the trial court ordered the four-year-sentence imposed for this offense to run concurrent to the eighteen-year-sentence imposed on theft of property over $250,000 conviction. Therefore, any error in failing to consider an alternative sentence for theft of property over $10,000 was harmless.

sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

Before imposing a sentence of full confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). Our Supreme Court has noted that intentional acts and those committed for profit are more deterrable than those not motivated by a conscious effort to break the law, stating:

> Actions that are the result of intentional, knowing, or reckless behavior or those motivated by a desire to profit from illegal activity are probably more deterrable than those which are not the result of a conscience effort to break the law. Indeed, this is the very rationale that underlies the deterrence aspect of punitive damages in tort law. *See Hodges v. S.W. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Common sense tells us that we may have less ability to deter crimes which are the result of provocation, sudden and extreme passion, or even negligent behavior, irrespective of whether others who commit similar crimes are incarcerated or given probation.

*Hopper*, 29 S.W.3d at 11.

"If the seriousness of the offense forms the basis for the denial of alternative sentencing, Tennessee courts have held that the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quotations omitted). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), -103(4). The party appealing a sentence bears the

burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Again, we review a trial court's sentencing determinations, including a denial of probation or another alternative sentence, under an abuse of discretion standard, and grant a presumption of reasonableness to within-range sentences reflecting an appropriate application of the purposes and principles of the Sentencing Act. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

When denying the defendant probation on the money laundering offenses, the trial court stated:

> The Court finds that that particular offense, the facts and circumstances surrounding the offense, and the nature and circumstances of the criminal conduct weigh greatly in favor of denying probation. The prior criminal history of the defendant, or lack thereof, weights greatly in favor of the defendant in this case but does not outweigh the facts and circumstances surrounding the offense and the nature of the criminal conduct.
>
> The factor as to whether or not it reasonably appears that the defendant will abide by the terms of probation weigh in favor of the defendant and whether or not the interests of society in being protected from possible future criminal conduct of the defendant are great. The Court finds that the defendant's position of trust, the defendant's deceit in covering up this particular crime coupled with the defendant's positions that he has held both with the State and the Tenessee Department of Correction[], lead this Court to apply that and . . . construe it against the defendant. The Court also finds that a sentence of full probation as it relates to the nine year sentences would unduly depreciate the seriousness of this particular offense.
>
> We had [eighty-seven] counts of money laundering in this cause, when I say this, I'm talking about 34049, to which the defendant has pled guilty to six counts. I further find that confinement is particularly suited as it relates to the nine year sentence to provide an effective deterrent to others likely to commit similar offenses, and thus the defendant's sentence, as it relates to the nine year consecutive sentence, will not be subject to probation.

The defendant contends the trial court erroneously denied probation on the money laundering convictions due to his positions of trust within the victim organizations, his deceit in covering his actions, and his lawful employment with the Tennessee Department of Correction. According to the defendant, his positions of trust within the victim

organizations are not relevant to the criteria set forth in Tennessee Code Annotated section 40-35-103, and deceit, as an element of money laundering, could not be used by the trial court as a reason to deny alternative sentencing. Further, the defendant argues his lawful employment with the Tennessee Department of Correction was inappropriate for the trial court to consider when denying his request for probation. The State counters the defendant failed to meet his burden of proving entitlement to probation, and because he has not overcome the presumption that his sentence of confinement was reasonable, he is not entitled to relief. We agree with the State.

The trial court ultimlately denied probation on the money laundering offenses to avoid depreciating the seriousness of the offenses and to provide an effective detterence to others likely to commit similar offenses. When doing so, the trial court found any factors supporting the appriopriatness of probation were heavily outweighed by the facts and circumstances surrounding the offense and the nature of the criminal conduct, which included the defendant's abuse of his positions of trust within the victim organizations and continued deceit in unlawfully taking and disposing of the money for the majority of his adult life. Based on our review of the record, a large portion of the money taken and disposed of by the defendant originated with the taxpayers of Lawerence County, Tenneessee, and for the duration of the defendant's criminal activity, he simultaneously held financial positions with the Tennessee Department of Correction. The trial court also referenced this deceit, abuse of trust, and employment in the public sector as examples of why confinement was necessary to protect society from the continued criminal conduct of the defendant. Consideration as to whether confinement is necessary to avoid depreciating the seriousness of the offense and/or particularly suited to provide effective deterrence to others likely to commit similar offenses are valid considerations under Tennessee Code Annotated section 40-35-103.

Further, our Supreme Court recently addressed the propriety of denying probation based on the seriousness of the defendant's offense as committed in *State v. Kevin E. Trent*, --- S.W.3d ---, 2017 WL 5022633, at *9 (Tenn. 2017). When doing so, the Court noted "a trial court may not consider factors that constitute elements of the offense in determining whether the circumstances of an offense are sufficient to deny an alternative sentence." *Id*. (citation and internal quotations omitted). Therefore, when denying probation on the sole basis of the offense itself, "the circumstances of the offense *as particularly commited in the case under consideration* must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense." *Id*. (emphasis in original). This necessarily requires the trial court to examine and make findings regarding the particular circumstances surrounding the defendant's commission of the convicted offenses.

The trial court did not base its denial of probation for the money laundering convictions solely on the elements of that offense. Instead, the trial court denied the defendant probation to avoid depreciating the seriousness of the money laundering offenses and to provide effective detterence to others likely to commit similar offenses. In the course of its ruling, the trial court properly examined and made findings regarding the egregious circumstances of the crimes. "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (per curiam). The defendant has not shown such a departure. The defendant is not entitled to relief on this issue.

## C.     Consecutive Sentencing

Finally, the defendant challenges the trial court's imposition of consecutive sentences. This Court reviews consecutive sentences under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012); *State v. Pollard*, 432 S.W.3d 851, 859-60 (Tenn. 2013). The party appealing a sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Pollard*, 432 S.W.3d at 861. Those factors include "[t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood," and "[t]he defendant is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(1), (2). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705). When imposing consecutive sentences, the court must consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1), -103(2), (4); *see State v. Imfield*, 70 S.W.3d 698, 708 (Tenn. 2002).

Here, the trial court ordered the defendant's sentences for the theft and money laundering to be served consecutively after finding the defendant to be an offender with an extensive record of criminal activity. In support of this finding, the trial court made these observations:

The defendant turned 18 in August of 2000. Less than nine years later, according to the indictments and to which he was now pled, the defendant started the first criminal activity, that being the beginning of the time period for what we would have at one point called theft, embezzlement, now all encompassed under theft. That criminal episode continued from May 4th, 2009 through February 9th of 2016, six years and ten months, or 38.22 percent of his adult life, was spent committing thefts. That is un-rebutted and uncontroverted, that almost 40 percent of this man's adult life was spent embezzling, stealing, and doing acts specifically meant to cover up that crime. The defendant is an offender whose record of criminal activity is extensive. The Court finds that that particular consecutive sentencing factor would be applicable in this case.

The Court can think of few things that would occur over a six – almost seven year period that would be . . . more extensive than what has gone on and what has been demonstrated to this Court now.

The defendant challenges the trial court's imposition of consecutive sentences because the State failed to trace the funds stolen to determine if they were used as a "major source of livelihood," the defendant had been lawfully employed since the age of 15, and the defendant had no prior criminal record, all of which weigh against a finding of professional criminal status. The trial court, however, did not impose consecutive sentences due to the defendant's professional criminal status. *See* Tenn. Code Ann. § 40-35-115(b)(1). Rather, it imposed consecutive sentences because it found the defendant to be an offender with an extensive record of criminal activity. *See* Tenn. Code Ann. § 40-35-115(b)(2). This Court has previously held that for the purpose of consecutive sentencing, the trial court may use the convictions for which the defendant is being sentenced as evidence of an extensive record of criminal activity. *See State v. Cummings*, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992) (affirming the trial court's imposition of consecutive sentences based on the defendant's current offenses as a record of extensive criminal activity despite the lack of a prior criminal record). The defendant has not established the trial court's imposition of consecutive sentences was improper and is not entitled to relief on this issue.

### Conclusion

Based on the foregoing, we affirm the sentencing decisions of the trial court.

_____
J. ROSS DYER, JUDGE